UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DANIELS AGROSCIENCES, LLC,            :
                    Plaintiff,        :
                                      :
v.                                    :     C.A. No. 13-268ML
                                      :
BALL DPF, LLC,                        :
                    Defendant.        :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

Rhode Island-based Plaintiff Daniels Agrosciences, LLC ("DAS") has sued Texas-based

Defendant Ball DPF, LLC ("Ball") alleging tortious interference with contractual and

advantageous business relations.  Before the Court is Ball's Motion to Dismiss for Lack of

Personal Jurisdiction and Improper Venue or, in the Alternative, To Transfer Venue.   ECF No.

5.  Because Ball's connections with Rhode Island are remote and the only nexus between DAS's

claims and Rhode Island is the sole fact of DAS's claimed injury through reduced royalties as a

result of the alleged interference, I find that this Court lacks both general and specific personal

jurisdiction over Ball.  Accordingly, I recommend that Defendant's Motion to Dismiss for Lack

of Personal Jurisdiction and Improper Venue be GRANTED.  I further recommend that Ball's

alternative Motion to Transfer Venue be DENIED as moot.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

DAS, a Rhode Island limited liability company, develops fertilizer and plant food

products for turf, horticulture, landscape and retail markets; it licenses its technology to other

companies that manufacture and sell the products, in consideration for royalty payments to DAS.

Ball, a Texas limited liability company, is a manufacturer of horticultural, landscape and turf

products.  A wholly-owned subsidiary of Ball Horticultural Company in Illinois, its only manufacturing facility is in Texas.

DAS and Ball are involved in two contractual relationships, one indirect and one direct, both of which are pertinent to this Motion.

The first is an exclusive license agreement between non-party Progressive Turf, LLC ("Progressive"), a Georgia limited liability company, and DAS – this license agreement is the one with which DAS says Ball tortiously interfered.  Under this license, Progressive was authorized to manufacture and sell turf fertilizer based on a formula developed by DAS in exchange for royalty payments to DAS (the "DAS/Progressive License Agreement").  Progressive also was permitted to enter into toll manufacturing agreements with other entities.  In August 2010, it contracted with Ball to manufacture turf fertilizer products at Ball's facility in Texas.  Ball sent shipments based on Progressive's orders from Texas primarily to customers in the southeastern United States.  Under this license agreement, Ball never made any shipments to Rhode Island and had no direct contractual relationship with DAS.  The instant dispute arises from DAS's allegation that Ball made improper and unauthorized changes to DAS's turf fertilizer formula, causing Progressive to stop purchasing manufactured turf fertilizer products from Ball in January 2011.  As a result, DAS claims, Progressive reduced its royalty payments to DAS until they eventually ceased entirely and the value of DAS's brand was diminished.

The original parties to the DAS/Progressive License Agreement were four predecessors of DAS, whose operations were based in Texas.  As a result, the license agreement speaks of Texas, and not Rhode Island, although by the time of this litigation, Rhode Island-based DAS had assumed all of its predecessors' rights.  Specifically, the DAS/Progressive License Agreement contains Texas choice of law and forum selection provisions and requires that all

notices to DAS be sent to an address in Texas.  Consistent with these provisions, when DAS's predecessors sued Progressive over the license agreement, suits were filed in Texas.  See Daniels v. Progressive Turf, LLC, No. 4:05-CV-394, 2006 WL 2589114, at *1 (E.D. Tex. Sept. 7, 2006). Apart from DAS's location in Rhode Island, the only Rhode Island contacts arising from the DAS/Progressive License Agreement are the royalty payments, which Progressive sent to DAS in Rhode Island, of which DAS alleges Ball was aware.

The other contractual relationship between DAS and Ball is a direct license unrelated to the tortious interference claims in this case.  In August 2010, DAS licensed Ball to manufacture and sell plant food products (the "DAS/Ball License Agreement") – not the turf fertilizer covered by the DAS/Progressive License Agreement.  Under this license, Ball manufactured and sold "Daniel's Plant Food" products to independent distributors, two of which were in Massachusetts. These two distributors – not Ball – made *de minimis* sales into Rhode Island.  Under the license, Ball also toll-manufactured plant food products for Alabama-based Bonnie Plants, Inc. ("Bonnie").  These products were sold by Bonnie – not Ball – to major retailers, which resold from various outlets, including Home Depot and Lowe's stores in Rhode Island, under Bonnie's brand with a label that states, "Under License from [DAS]" and "Guaranteed by [Ball]."  Unlike the Texas choice of law and forum clauses in the DAS/Progressive License Agreement, the DAS/Ball License Agreement contains Rhode Island notice, choice of law and forum selection clauses.  Ball sent its royalty payments to DAS in Rhode Island.

In addition to the dispute over Ball's failure to properly manufacture turf fertilizer for Progressive, the relationship between DAS and Ball in connection with the plant food license agreement was acrimonious.  Ultimately, DAS and Ball entered a settlement agreement in

October 2011, which purportedly settled all such claims[1] while allowing the parties to continue

working together pursuant to the DAS/Ball License Agreement.  The settlement proved

unfruitful.  By the time this litigation was initiated in March 2013, the DAS/Ball License

Agreement had been terminated, Ball had stopped manufacturing plant food products under the

Daniels Plant Food name and had stopped manufacturing products for Bonnie, although Bonnie

is still selling off inventory so that Bonnie plant food products bearing the Ball name are

currently for sale in Rhode Island at Home Depot and Lowe's.

On March 13, 2013, DAS filed suit against Ball in Rhode Island Superior Court alleging

state-law claims of tortious interference with its contractual and advantageous business relations

with Progressive arising from the DAS/Progressive License Agreement.  According to DAS, Ball

made unauthorized changes to DAS's turf fertilizer recipe to sever DAS and Progressive's

business relationship, to tarnish DAS's brand and reputation, to gain an unfair advantage over

DAS, and to diminish DAS's operational capabilities in order to reduce royalty payments due

under the DAS/Ball License Agreement.  ECF No. 1-2, ¶¶ 17, 23.  As a result of Ball's improper

conduct, DAS says its royalty payments from Progressive under the DAS/Progressive License

Agreement dwindled to zero.

Ball timely removed the case based on diversity jurisdiction and filed the instant motion

in lieu of answering the Complaint.  Each side has submitted affidavits and documentary

evidence in support of their respective positions.

---

[1] In its defense of this case on the merits, Ball will argue that this settlement agreement bars DAS from bringing the tortious interference claim in this case.  While Ball argues that the settlement should also be considered in connection with its jurisdiction motion as evidence that Ball could not anticipate being haled into Rhode Island under the DAS/Ball License Agreement, I do not rely on this argument in this Report and Recommendation because it would require this Court to reach and determine a factual matter intertwined with the merits of the case on a motion to dismiss based on the lack of personal jurisdiction.  Barry v. Mortg. Servicing Acquisition Corp., 909 F. Supp. 65, 69-70 (D.R.I. 1995) (fact finding during consideration of jurisdictional motion should be used cautiously because troubling issues can arise concerning whether "issue preclusion" or "law of the case" will later preclude party from asserting facts contrary to court's factual findings at evidentiary hearing).

## II.     METHOD OF REVIEW

Under Fed. R. Civ. P. 12(b)(2), a motion to dismiss for lack of personal jurisdiction imposes the burden on the plaintiff to establish the existence of jurisdiction.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009).  A district court may choose from three methods[2] for determining whether a plaintiff has met its burden: prima facie, preponderance of the evidence or an intermediate standard.  Id.; Barry v. Mortg. Servicing Acquisition Corp., 909 F. Supp. 65, 69-70 (D.R.I. 1995).

The prima facie method is plaintiff-friendly – the court considers only whether the plaintiff has submitted enough evidence to support personal jurisdiction and properly documented evidence is accepted as true regardless of whether the defendant disputes it.  Astro-Med, Inc., 591 F.3d 8.  The defendant's facts are considered only if not contradicted by the plaintiff.  Id.  The court acts as a data collector, not a fact finder.  Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995).  Nevertheless, the prima facie method does not require the court to credit conclusory allegations, unproven assumptions, generalizations or farfetched inferences.  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998); Sostre v. Leslie, No. CA 07-289 ML, 2008 WL 239527, at *8 (D.R.I. Jan. 28, 2008).  The plaintiff cannot rest on the pleadings, but must produce evidence of specific facts; unsupported allegations are insufficient.  See Foster-Miller, Inc., 46 F.3d at 145; Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992).  The prima facie method is useful to screen out easy cases where personal jurisdiction can be determined without resolving conflicting versions of the facts.  Foster-Miller, Inc., 46 F.3d at 145.  The preponderance or intermediate methods of

---

[2] The First Circuit has suggested the three methods are examples of "several possible models," but has not propounded what the additional methods might be, presumably leaving the district courts in their discretion to develop other methods in appropriate circumstances.  See Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-47 (1st Cir. 1995).

evaluating the existence of personal jurisdiction are appropriate if the proffered evidence is materially conflicting or if the plaintiff's affidavits or averments are "patently incredible." Barry, 909 F. Supp. at 69 (quoting Boit, 967 F.2d at 676).

Accepting as true DAS's facts and such of Ball's facts as are uncontradicted, the jurisdictional facts presented in connection with Ball's personal jurisdiction motion are sufficient to permit this Court to employ the prima facie method to evaluate whether DAS has sustained its burden of establishing personal jurisdiction over Ball in Rhode Island.

## III.   PERSONAL JURISDICTION

The Due Process Clause of the Fourteenth Amendment requires that an out-of-state defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The district court may exercise two types of personal jurisdiction over defendants: general and specific jurisdiction. Astro-Med, Inc., 591 F.3d at 9. General jurisdiction broadly subjects the defendant to suit in the forum on all matters, including those unrelated to the defendant's contacts with the forum. Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 79 (1st Cir. 2013); Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Specific jurisdiction, by contrast, depends on "an affiliatio[n] between the forum and the underlying controversy." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). For a federal court sitting in diversity to exercise specific jurisdiction, Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33(a), must authorize it. Bluetarp Fin., Inc., 709 F.3d at 79; Astro-Med, Inc., 591 F.3d at 8. The Rhode Island long-arm statute is coextensive with the permissible reach of the Due Process Clause. Astro-Med, Inc., 591 F.3d at 8.

DAS contends that Ball's presence in Rhode Island is sufficient for the exercise of general jurisdiction and that the Rhode Island nexus with the claim is adequate for specific jurisdiction.

A.      General Jurisdiction

For a company, the paradigm forum for general jurisdiction is the place where it is "fairly regarded as at home." Goodyear Dunlop, 131 S. Ct. at 2853-54. Since general jurisdiction subjects a defendant to suits involving any claim against it, the standard for establishing general jurisdiction is considerably more stringent than for specific jurisdiction. Cossaboon, 600 F.3d at 32. To make the determination whether a plaintiff has sustained its burden of establishing general jurisdiction, the First Circuit has articulated a three-prong test: (1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances. Id.

Analysis of the first two prongs is not mechanical or quantitative but depends on the quality and nature of the defendant's activity in the forum; although the inquiry is highly individualized and fact-specific, it is guided by the quantum of contacts deemed sufficient in other cases. Id. at 32-33. The sufficiency of the contacts, the first prong, requires an examination of whether the defendant is engaged in the continuous and systematic pursuit of "extensive and pervasive" general business activities in the forum state. Id. at 32; Barry, 909 F. Supp. at 75. The second – the purposefulness of the contacts – requires an affirmative demonstration that the defendant purposefully and voluntarily directs its activities toward the forum to avail itself of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of the state's laws. Cossaboon, 600 F.3d at 32. In examining whether contacts support general jurisdiction, the court may consider those prior to the filing of

7

the lawsuit, including those that occurred after the cause of action arose but before the suit was filed.[3]  Id. at 29; Harlow v. Children's Hosp., 432 F.3d 50, 64-65 (1st Cir. 2005).  The third prong examines whether the exercise of general jurisdiction is reasonable.  Cossaboon, 600 F.3d at 33.  The reasonableness inquiry is "secondary rather than primary," and a court does not address it unless the plaintiff has cleared the first and second prongs.  Id.; Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990).

Almost all of DAS's jurisdictional facts presented in support of general personal jurisdiction arise out of the DAS/Ball License Agreement, which is unrelated to these claims and which DAS terminated prior to the filing of this case.  Although such pre-suit facts are pertinent to general jurisdiction, using the prima facie method applied to these jurisdictional facts, I find that DAS has failed to establish the first two prongs of the general jurisdiction inquiry; that is, Ball lacks continuous and systemic contacts with Rhode Island and has not purposefully availed itself of the benefits and protections of Rhode Island's laws.  The analysis follows.

Ball is a Texas company; it has no office, facility, employees or files in Rhode Island.  See Goodyear Dunlop, 131 S. Ct. at 2853-54, 2856 (office, files and president of company in forum render defendant "at home" in forum state).  To establish that Ball is nevertheless "at home" in Rhode Island, DAS relies primarily on Ball's manufacturing of Bonnie products; however, it is Bonnie, not Ball, which sells these products to retailers, which in turn offer them for sale around the country.  It is these retailers, specifically Home Depot and Lowe's, which made the decision to offer them to consumers through their Rhode Island outlets.  DAS points to the Bonnie label, which states, "Under License from [DAS]" and "Guaranteed by [Ball]" and

---

[3] This approach stems from the basic distinction between general and specific jurisdiction.  Unlike specific jurisdiction, which focuses on the cause of action, the defendant and the forum, general jurisdiction is dispute blind with the sole focus on whether the defendant is "fairly regarded as at home" in the forum.  Goodyear Dunlop, 131 S. Ct. at 2853-54; Harlow, 432 F.3d at 65.

may be seen on plant food that can be purchased currently in Rhode Island.  However, DAS does not dispute that Ball ships these products to Bonnie terminals as directed and has never directed them to Rhode Island.

DAS's reliance on Bonnie's sales of Ball-manufactured products to retailers, who resell in Rhode Island, is misplaced.  Such a "stream of commerce" jurisdictional theory may be useful to establish specific jurisdiction,[4] but is insufficient for general jurisdiction.  See Eon Corp. v. AT&T Mobility, LLC, 879 F. Supp. 2d 194, 204 (D.P.R. 2012) (error to apply stream of commerce theory to general jurisdiction; even 440,000 contracts between defendant phone carrier and residents of forum insufficient to confer general jurisdiction) (citing Goodyear Dunlop, 131 S. Ct. at 2849); Fiske v. Sandvik Mining, 540 F. Supp. 2d 250, 255-58 (D. Mass. 2008) (some indirect sales through at least one dealer insufficient standing alone to confer general jurisdiction); Nordica USA Corp. v. Ole Sorensen, 475 F. Supp. 2d 128, 137 (D.N.H. 2007) (sales by companies using technology licensed by defendant insufficient for general jurisdiction).  Here there is no evidence that Ball was aware of where Bonnie's customers shipped and resold these products, nor is there evidence that these resellers were acting for Ball. Cf. Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 85 (1st Cir. 1997).  And if such evidence had been presented, it would not likely be enough; even regularly occurring direct sales of a product in a state do not justify the exercise of general jurisdiction over a claim unrelated to those sales.  Goodyear Dunlop, 131 S. Ct. at 2855.  Otherwise, an unworkable "sprawling view" of general jurisdiction would prevail, in which "any substantial manufacturer or seller of goods

---

[4] The "stream of commerce" approach is used in analyzing specific jurisdiction when the cause of action is based on the sale or use of the product in the forum, though such sale or use is not necessarily enough.  See, e.g., J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2785 (2011) (plurality op.) (specific jurisdiction improper when manufacturer "knows or reasonably should know" that its products are distributed to a specific forum); Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 85 (1st Cir. 1997) ("placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State;" fact that product manufactured by defendant was ultimately resold to plaintiff in Puerto Rico does not confer specific jurisdiction) (citing Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 107 (1987)).

would be amendable to suit, on any claim for relief, wherever its products are distributed." Id. at 2856.

DAS next points to the sales of Daniels Plant Food products in Rhode Island.  While Ball disputes that these are its sales because it sells these products only to Massachusetts-based independent distributors, two of which resell into Rhode Island, some courts have found sales by a distributor appointed to sell into the state to be a significant jurisdictional fact.  Compare Glater v. Eli Lilly & Co., 744 F.2d 213, 215, 217 (1st Cir. 1984) (sales made by independent distributors insufficient to confer general jurisdiction), with Melia v. Les Grands Chais de France, 135 F.R.D. 28, 33-35 (D.R.I. 1991) (sale of product through distributors in Connecticut and Massachusetts with result that it was stocked in half of liquor stores in Rhode Island subjects defendant to suit in Rhode Island).  However, it is undisputed that only $1,800 worth of Ball-manufactured Daniels Plant Food and other plant food products were sold in Rhode Island between 2010 and 2012.  Even if Ball itself (as opposed to its independent distributors) sold Daniels Plant Flood products directly into Rhode Island, isolated sales like these are too remote and limited in financial significance for general jurisdiction.  See Eon Corp., 879 F. Supp. 2d at 203 ("de minimis purchase or sales transactions between a nonresident defendant and the forum state are insufficient to establish general jurisdiction"); Harrington v. C.H. Nickerson & Co., C.A. No. 10-104-ML, 2010 WL 3385034, at *5 (D.R.I. Aug. 25, 2010) (1.4% of total revenue insufficient to confer general jurisdiction); Newman v. European Aeronautic Defence & Space Co. Eads N.V., 700 F. Supp. 2d 156, 170-71 (D. Mass. 2010) (scattered sales insufficient to confer general jurisdiction).

DAS tries to establish general jurisdiction based on the averment in the affidavit of its principal that Ball's parent (not Ball), Illinois-based Ball Horticultural, has a New England sales

office in Connecticut, where it employs a sales representative whose responsibilities include

sales of Ball products in parts of New England including Rhode Island.[5]  Ball hotly disputes this

averment.[6]  Taking DAS's facts as true, such sales efforts alone are insufficient to move the

jurisdictional meter.  Even the employment of eight salesmen to market products in a forum state

is insufficient to establish general jurisdiction.  See Cossaboon, 600 F.3d at 34 (citing Glater, 744

F.2d at 215, 217); see also Harlow, 432 F.3d at 66 ("where defendant's only activities consist of

advertising and employing salesmen to solicit orders, we think that fairness will not permit a

state to assume jurisdiction").  In any event, sales efforts by the parent of the defendant do not

give rise to personal jurisdiction over the subsidiary – to credit this sales representative's work as

a jurisdictional fact would require evidence sufficient to pierce the corporate veil.  Goodyear

Dunlop, 131 S. Ct. at 2857; Donatelli, 893 F.2d at 465-66.  The Court cannot make the veil-

piercing leap based on speculation; DAS must present "strong and robust evidence," which it has

not done.  Russell v. Enter. Rent-A-Car Co. of R.I., 160 F. Supp. 2d 239, 251 (D.R.I. 2001); see

Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007) (piercing corporate

veil not appropriate when plaintiff provides no evidence to justify it).

    DAS contends that Ball's former website and current Facebook page establish sufficient

contact in that they advise the public how to purchase Ball's Daniels Plant Food and related

products in Rhode Island – both have contact information for the two Ball distributors based in

---

[5] The affidavit states: "Ball Horticultural Company maintains a New England sales office in nearby Connecticut. The sales representative for Rhode Island, Connecticut and Western Massachusetts is Mitchell Rand.  He is responsible for handling sales of [Ball] products to customers in this territory, including Rhode Island."  ECF No. 9-2 ¶ 15.

[6] If this fact tipped the scales in favor of the exercise of personal jurisdiction, this Court would reexamine it using either the intermediate or preponderance method because the affidavit averring this fact borders on "patently incredible" – all of the other evidence establishes that the only selling of Ball products in Rhode Island was done by other entities, such as Lowe's, Home Depot or the Massachusetts distributors, and the affidavit fails to explain how the principal of DAS has first-hand knowledge regarding the duties of an employee of Ball's parent.  Such fact finding is not necessary because this jurisdictional fact is insufficient.

Massachusetts, which are authorized to resell in Rhode Island.  As with the other contacts, this

quantum of online advertising might work for specific jurisdiction, but is insufficient to establish

general jurisdiction.  "[E]ven extensive advertising contacts with the forum state [are] inadequate

to permit an assertion of general jurisdiction."  Cossaboon, 600 F.3d at 34; see also Lawson v.

Law Office of Shawn Whittaker, PC, No. C.A. 10-326 ML, 2010 WL 4455823, at *3 (D.R.I.

Nov. 3, 2010).  The existence of an informational website accessible in a forum is insufficient to

establish jurisdiction unless, at a minimum, it has interactive features that allow online ordering,

which is entirely missing from Ball's online presence.  Cossaboon, 600 F.3d at 30, 35-36.

The final arrow in DAS's quiver focuses on the language of the now-terminated

DAS/Ball License Agreement, which contains Rhode Island choice of law and forum selection

provisions.  It argues that Ball should expect to be haled into court in Rhode Island for any

dispute since it agreed to be sued in Rhode Island for breaches of the DAS/Ball License

Agreement.  This red herring does not float the boat.  Forum selection clauses in contracts that

are not the basis for the cause of action are not sufficient to establish general jurisdiction.

Abelesz v. OTP Bank, 692 F.3d 638, 657 (7th Cir. 2012); see also Vangura Kitchen Tops, Inc. v.

C&C N. Am., Inc., No. 08CV1011, 2008 WL 4540186, at *9 (W.D. Pa. Oct. 7, 2008) (forum

selection clause in one agreement does not give rise to general jurisdiction over tortious

interference claims involving same parties based on other agreement).

Whether viewed individually and holistically, DAS's jurisdictional facts do not establish

either continuous and systemic contacts or purposeful availment directed at Rhode Island.  Ball

is a Texas company without an office, employees or files in Rhode Island.  Ball's online

presence is informational and Rhode Island customers cannot order products from it through the

internet.  Ball ships no products to Rhode Island covered by the contract underlying DAS's

tortious interference claims, and on a different contract only $1,800 worth of Daniels Plant Food and related products made it to Rhode Island while the remainder arrived here through the stream of commerce from Bonnie distributors over which Ball has no control.  Ball cannot be "fairly regarded" as "essentially at home" in Rhode Island.  Goodyear Dunlop, 131 S. Ct. at 2851, 2853-54; see also Cossaboon, 600 F.3d at 29-31, 39 (no general jurisdiction in New Hampshire despite evidence that defendant advertised there, operated a website accessible there, registered to do business and employed a person there, contracted with New Hampshire entity and treated a substantial number of New Hampshire residents).[7]

    B.      Specific Jurisdiction

Specific jurisdiction examines: (1) whether the claims arise out of or are related to the defendant's in-state activities ("relatedness"); (2) whether the defendant has purposefully availed itself of the benefits and protections of the forum state's laws ("purposeful availment"); and (3) whether the exercise of jurisdiction is reasonable under the circumstances (the "Gestalt factors"). Bluetarp Fin., Inc., 709 F.3d at 83; Sawtelle v. Farrell, 70 F.3d 1381, 1388-89 (1st Cir. 1995). The plaintiff has the burden on relatedness and purposeful availment while the defendant must show jurisdiction is unreasonable.  See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994).  The inquiry ends if the plaintiff fails to establish relatedness or purposeful availment.  See Phillips Exeter Acad. v. Howard Phillips Fund. Inc., 196 F.3d 284, 288 (1st Cir. 1999).  Ultimately, the court must find for the plaintiff on all three prongs.  Bluetarp Fin., Inc., 709 F.3d at 80.  Specific jurisdiction is evaluated claim-by-claim.  Astro-Med, Inc., 591 F.3d at 9.  A court may exercise specific jurisdiction over a defendant on one claim while declining to exercise personal jurisdiction on others in the same complaint.  See id.

---

[7] Since DAS has failed to establish either continuous and systemic contacts or purposeful availment, the Court need not analyze the reasonableness prong of the general jurisdiction test.  See Cossaboon, 600 F.3d at 39 n.7.

To support its claim of specific jurisdiction over Ball, DAS alleges Ball knew that by manufacturing bad turf fertilizer product in Texas and supplying it to Progressive, Progressive would suffer decreased sales, which in turn would lead to decreased royalty payments from Progressive to DAS in Rhode Island.  Ball counters that it engaged in no Rhode Island-based activity related to its agreement with Progressive.  It simply shipped product from its Texas manufacturing facility to Progressive customers, primarily in the southeastern portion of the United States, never to Rhode Island.  While it was generally aware of the DAS/Progressive License Agreement, including the Rhode Island destination of Progressive's royalties, otherwise the License Agreement, including its choice of laws, forum selection and notice provisions, is entirely focused on Texas, where Ball itself is located.

      a.      Relatedness

To satisfy the relatedness prong, one or more of the elements of the cause of action must arise from or relate to the defendant's contacts with the forum state.  Bluetarp Fin., Inc., 709 F.3d at 80.  Relatedness focuses on the nexus between a plaintiff's claim and the defendant's contacts with the forum.  See Sawtelle, 70 F.3d at 1389.  It is a flexible, relaxed standard, as evidenced by the disjunctive nature of the requirement that the contact "arise out of" or "relate to" the defendant's forum-state activities.  Id.  While flexible, relatedness still requires a material connection between the defendant's forum-state contacts and the plaintiff's cause of action.  Negron-Torres, 478 F.3d at 25.  DAS points to only one jurisdictional fact to establish that relatedness is satisfied: Ball's conduct in Texas caused Progressive to send reduced royalty payments to DAS in Rhode Island – stated another way, Ball's out-of-state conduct caused in-forum effects, which DAS contends is enough for relatedness.  Calder v. Jones, 465 U.S. 783 (1984); Astro-Med, Inc., 591 F.3d at 9-10.  Hence, a threshold hurdle to the determination

whether DAS can get past the first prong depends on whether the in-forum economic effects of

Ball's conduct are appropriate for consideration at the relatedness phase of the specific

jurisdiction inquiry.

DAS's Supreme Court case, <u>Calder</u>, does not crisply resolve this issue.  <u>Calder</u> featured a

California actress who sued a Florida reporter and his editor, together with their weekly Florida

newspaper,[8] which had substantial circulation in California, based on a libelous article that

harmed her reputation in California.  465 U.S. at 785.  The reporter did his research in Florida by

making phone calls to California including to the actress, while the editor reviewed the article

and refused to print a retraction after the actress called from California to request one.  <u>Id.</u> at 786.

The court found that these actions were expressly and intentionally aimed at California because

the reporter and editor knew the article might have a devastating impact where the actress lived

and worked and where the newspaper had its widest circulation.  <u>Id.</u> at 789.  Accordingly,

personal jurisdiction over the reporter and editor was proper "based on the 'effects' of their

Florida conduct in California."  <u>Id.</u>

Proper application of <u>Calder</u> has sparked considerable disagreement in this Circuit.  In

<u>United States v. Swiss American Bank, Ltd.</u>, the court limited <u>Calder's</u> "effects test" to the

purposeful availment prong of the specific jurisdiction inquiry, holding that in-forum effects are

insufficient to clear the relatedness hurdle.  274 F.3d 610, 624-25 (1st Cir. 2001).  Judge Lipez

dissented because a plaintiff whose cause of action is based on the in-forum effects of out-of-

forum activity will almost never establish jurisdiction under the majority's reasoning.  <u>Id.</u> at 631

(Lipez, J., dissenting).

The issue arose again in <u>Astro-Med</u>, in which a Rhode Island company selling propriety

medical technology sued a California-based competitor over the hiring of one of plaintiff's

---

[8] The newspaper did not contest specific personal jurisdiction.

Florida-based employees whose employment contract had Rhode Island choice of law and forum provisions. 591 F.3d at 6. The employee had moved from Rhode Island to Florida and was recruited in Florida; prior to the hire, defendant was made aware of the employment contract, including the risk of litigation in Rhode Island based on the forum selection clause. Id. at 7. In the resulting suit for tortious interference with the employment contract, the District Court found specific jurisdiction in Rhode Island and the First Circuit affirmed, in an opinion signed by all three judges on the panel with two concurrences. Id. at 9-10. Citing Calder, but not Swiss American Bank, the court reasoned that the relatedness prong was satisfied because the defendant's out-of-state conduct consisted of knowingly hiring the employee of a Rhode Island company in arguable breach of an employment agreement based on Rhode Island law and subject to Rhode Island forum selection: this conduct "was a cause of the breach of the [employment agreement] – the actual injury – that occurred in Rhode Island." Id. at 10.

Judge Howard's Astro-Med concurrence described the jurisdictional question as "a close case for me" because the defendant "did not engage in any in-forum conduct or activity that is casually connected to the alleged tort," reducing the relatedness inquiry to examination of the location of the injury to the plaintiff. Id. at 21 (Howard, J., concurring). He joined the opinion by observing that one of the elements of a tortious interference claim is the "injury,"[9] so that the "economic tort at issue in this case was not completed until Astro-Med suffered injury in Rhode Island." Id. at 22. He concluded:

---

[9] DAS asserts without discussion that Rhode Island substantive law governs its tortious interference claims. Although "injury" in Rhode Island as a result of tortious interference is the jurisdictional hook that DAS relies on to establish specific jurisdiction, this Court need not decide which state's substantive law might apply because Rhode Island and the other states most connected to this suit, Texas (where DAS is based) and Georgia (where Progressive is based), all make the fact of injury an element of a tortious interference claim. See Bossian v. Anderson, 69 A.3d 869, 877 (R.I. 2013); Avilla v. Newport Grand Jai Alai LLC, 935 A.2d 91, 98 (R.I. 2007); see also Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77-78 (Tex. 2000); Dunham Eng'g, Inc. v. Sherwin-Williams Co., No. 14-12-00369-CV, 2013 WL 2360100, at *10 n.7 (Tex. App. May 30, 2013); Meadow Springs, LLC v. IH Riverdale, LLC, No. A13A0413, 2013 WL 3481822, at *2 (Ga. Ct. App. July 12, 2013).

> [T]he victim of a business tort often will suffer an economic injury, without which there has been no tort, in a forum that the defendant has not contacted in the classic sense. Construing the relatedness requirement in such cases slightly more generously than we might in others often will permit the best-suited forum to entertain the dispute, provided, of course, that the purposeful availment and reasonableness requirements are satisfied.

Id.; see also id. at 22-23 (Lipez, J., concurring).

Despite the seemingly contrary holding of Swiss American Bank, Astro-Med[10] teaches that this Court must consider "effects" at the relatedness phase when those effects are an element of a tortious interference cause of action.  As in Astro-Med, DAS's allegation that Ball's conduct caused damage to it in Rhode Island, which is an essential element of DAS's tortious interference claim, establishes a jurisdictional fact cognizable in examining whether DAS can prove relatedness.[11]  However, the resulting analysis still does not clear the relatedness hurdle.

Despite Ball's knowledge that interference with the DAS/Progressive License Agreement would adversely impact DAS's receipt of royalty payments in Rhode Island, the jurisdictional facts here are insufficient to satisfy relatedness because the causal nexus between the out-of-state

---

[10] The views in the Astro-Med concurrences urging the court to clarify Swiss American Bank may have more traction following the recent decision by the Supreme Court in Nicastro, 131 S. Ct. 2780 (2011).  Nicastro addressed the significance of placing products into the stream of commerce (with knowledge that they might end up in a particular forum) in the context of specific jurisdiction.  The issue splintered the justices and the case did not produce a majority opinion.  However, the four-justice plurality, in dicta that was not commented on by any of the other five justices, states:

> As a general rule, the exercise of judicial power is not lawful unless the defendant purposefully avails itself of the privilege of conducting activities with the forum State . . . [but] [t]here may be exceptions, say, for instance, in cases involving an intentional tort.

Id. at 2785; see also Goodyear Dunlop, 131 S. Ct. at 2857 n.5 ("When a defendant's act outside the forum causes injury in the forum . . . a plaintiff's residence in the forum may strengthen the case for the exercise of specific jurisdiction," citing Calder) (emphasis in original).  Later, the same four justices explained that a state's exercise of jurisdiction generally requires purposeful availment, but in some cases, such as an intentional tort claim, the "defendant might well fall within the State's authority by reason of his attempt to obstruct its laws."  Nicastro, 131 S. Ct. at 2787.

[11] This contrasts with the holding in Phillips Exeter, which found "the receipt of payment was merely an in-forum effect of on an extra-forum breach" insufficient to satisfy specific jurisdiction.  196 F.3d at 291.  Unlike the breach of fiduciary duty action in Phillips, in which receipt of payment was not an element of the claim, DAS's tortious interference cause of action was not complete until it suffered damages, thus making the location of the royalty payments a relevant fact for jurisdictional purposes.

conduct and the in-forum injury is too attenuated.  See Harlow, 432 F.3d at 61-62 (causation is

central to the relatedness inquiry in tort cases); Phillips Exeter Acad., 196 F.3d at 289 (court

must probe causal nexus between defendant's contacts and plaintiff's cause of action);

Ticketmaster-New York, Inc., 26 F.3d at 207 (causation is attenuated when intervening activities

of third parties have significant impact on plaintiff's injury).

Astro-Med's relatedness facts evinced proximate cause, demonstrating a strong nexus

between out-of-state conduct causing in-forum injury, because the employment contract was

signed in Rhode Island, the choice of law provision called for Rhode Island law, the exclusive

forum selection clause named Rhode Island and the defendant was aware of the risk of Rhode

Island litigation before causing the injury to the Rhode Island employer as a result of the

employee's breach and misappropriation of proprietary information.  No factors like these are

present here: the DAS/Progressive License Agreement was not executed in Rhode Island, it is

governed by Texas law and it has an exclusive forum selection clause that requires binding

arbitration in Texas.  See Bluetarp Fin., Inc., 709 F.3d at 81 (choice of law and forum selection

clauses in contracts are significant to relatedness).  Unlike Astro-Med, DAS does not allege that

Progressive breached any part of the DAS/Progressive License Agreement as a result of Ball's

conduct.  The only connection to Rhode Island is Progressive's transmission of reduced royalty

payments.  Ball committed the alleged bad acts in Texas; it did not send any misformulated

product to Rhode Island; and Progressive is based in Georgia.  All of Ball's dealings with

Progressive occurred in Texas, Georgia and other southeastern states.  The happenstance that

DAS set up shop in Rhode Island and then acquired the rights under the DAS/Progressive

License Agreement from its Texas predecessors does not magically give rise to jurisdiction.

"Jurisdiction cannot be created by and does not travel with the [plaintiff] wherever [it] goes."

Harlow, 432 F.3d at 63 (declining to exercise specific jurisdiction in Maine because Maine-based patient traveled to Massachusetts for medical treatment).

Similarly, the location of payments is a meaningful datum but does not command decretory significance under the relatedness prong.  Phillips Exeter Acad., 196 F.3d at 291.  In Phillips Exeter, the plaintiff sued in New Hampshire but most of the defendant's claim-specific actions occurred in Florida and Delaware.  The only New Hampshire contacts were sending checks to the state, writing a few letters to the plaintiff and visiting on one occasion to negotiate a settlement.  The First Circuit found these insufficient to satisfy relatedness.  Id. at 291; see also Kulko v. Superior Court, 436 U.S. 84, 93 (1978) (no personal jurisdiction in California against father to modify custody agreement entered into in New York, even though agreement required support payments to the mother and minor children in California); Hanson v. Denckla, 357 U.S. 235, 250-52 (1958) (settlor had executed a trust indenture in Delaware, naming a Delaware trustee, settlor later moved to Florida and received payments there; heirs sued trustee in Florida court to invalid trust, Supreme Court found no personal jurisdiction).

At bottom, without more significant connections to Rhode Island between Ball's conduct and DAS's tortious interference claims, the nexus between Ball's actions and Rhode Island is too weak to satisfy relatedness.  See Swiss Am. Bank, 274 F.3d at 623 (relatedness inquiry not met when nexus between forum contacts and cause of action is too attenuated; to find otherwise would violate fundamental fairness because it would force a defendant with non-continuous or non-systematic contacts to defend itself in that forum); Mass. Sch. of Law, 142 F.3d at 35-36 (letter from A to B that reports on C's actions does not confer personal jurisdiction over C in B's home state based on those actions); Sawtelle, 70 F.3d at 1391 (relatedness prong "hangs . . . by a thread" when gravamen of claim is that plaintiff suffered in forum effects of defendant's

negligence committed elsewhere).  Due process requires more than a defendant's knowledge of reduced royalties received in the plaintiff's home state.  Otherwise, relatedness would always be satisfied when a plaintiff suffers economic injury in its own forum, a proposition that finds no support in First Circuit precedent or common sense.[12]

b.      Purposeful Availment

DAS's specific jurisdiction proof also founders on the purposeful availment prong, which requires evidence of "a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable."  Bluetarp Fin., Inc., 709 F.3d at 82 (quoting Hannon v. Beard, 524 F.3d 275, 284 (1st Cir. 2008)).  Purposeful availment is a "rough quid pro quo," that is, "when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior."  Id. (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011)).  Its cornerstones are voluntariness and foreseeability.  Id.  To sustain its burden, a plaintiff must show (1) that it felt the injurious effects of a defendant's tortious act in the forum, and (2) that the defendant's intentional conduct was "calculated to cause injury" to the plaintiff there.  Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998) (quoting Calder, 464 U.S. at 791).  A defendant's interactions with a state are not voluntary just because a defendant

---

[12] Although DAS does not rely upon it as a basis for specific jurisdiction, its Complaint alleges that one of Ball's improper motives in tortiously interfering with the DAS/Progressive License Agreement was to reduce royalties due from Ball to DAS under the DAS/Ball License Agreement.  ECF No. 1-2, ¶¶ 17, 23.  This allegation could conceivably give rise to relatedness because improper interference is an essential element of DAS's tortious interference claims and the DAS/Ball License Agreement has Rhode Island choice of law and forum selection clauses.  See Greensleeves, Inc. v. Smiley, 68 A.3d 425, 432 (R.I. 2013); Avilla, 935 A.2d at 98.  However, DAS has not sued Ball for breach of contract under the DAS/Ball License Agreement and the forum selection clause in that agreement has no significance here.  DAS's bare allegation in its Complaint is not a jurisdictional fact sufficient to consider in support of this jurisdictional inquiry.  Boit, 967 F.2d at 675.

has a relationship with the plaintiff who happens to reside there.  Phillips Exeter Acad., 196 F.3d at 292.

The focal point of the DAS/Progressive License Agreement is Texas, where Ball is located and where disputes under it are required to be resolved based on Texas law.  At most, Ball was "eased into position" to cause harm in Rhode Island by virtue of DAS's acquisition of the rights of the original Texas-based parties to the DAS/Progressive License Agreement.  See Ticketmaster-New York, Inc., 26 F.3d at 208-09 (gunman who fires into a state is subject to jurisdiction there, but gunman who is "eased into position" behind gun aimed by another is not).  Voluntary interaction with a forum requires more.

Ball simply did not benefit from contact with Rhode Island in a way that makes the exercise of personal jurisdiction over it in Rhode Island foreseeable.  Phillips Exeter Acad., 196 F.3d at 292.  Ball's awareness of the DAS/Progressive License Agreement, including that Progressive was sending payments to Rhode Island, is insufficient – "[t]he theory that this Court can exercise jurisdiction over [defendants] because they knew of the [agreement between the plaintiff and another party] is unpersuasive," particularly where the defendant is not a party to the agreement and did not engage in any purposeful activity related to the agreement in Rhode Island.  Sostre, 2008 WL 239527, at *6.  Mere knowledge of where the payments go does not make it foreseeable that Ball would be haled into court here.  See Phillips Exeter Acad., 196 F.3d at 292 (annual payments to forum required by contract "do not so much as . . . hint" that a defendant benefits from protections of forum such that it is foreseeably susceptible to suit in the forum); Emissive Energy Corp. v. SPA-Simrad, Inc., 788 F. Supp. 2d 40, 49 (D.R.I. 2011) (mere foreseeability of harm in forum not enough to establish specific personal jurisdiction).

c.      The Gestalt Factors

Even if this Court were to accept that DAS had alleged enough to clear relatedness and

purposeful availment, the weakness of its jurisdictional facts still fail the test of reasonableness.

Phillips Exeter Acad., 196 F.3d at 288 n.1; see also Harlow, 432 F.3d at 67 (the weaker the

showing on first two prongs, the less a defendant needs to show in terms of unreasonableness to

defeat jurisdiction).  The following "Gestalt factors" guide the Court in determining

reasonableness for specific jurisdiction: (1) Ball's burden of appearing in Rhode Island, (2)

Rhode Island's interest in adjudicating the dispute, (3) DAS's interest in obtaining convenient

and effective relief, (4) the interstate judicial system's interest in efficient resolution of the

matter, and (5) the common interests of all states in promoting substantive social policies.

Bluetarp Fin., Inc., 709 F.3d at 83.  The Gestalt factors are not the only criteria a court can use

when assessing reasonableness, but courts should tread lightly when adding additional factors to

the mix.  See Foster-Miller, Inc., 46 F.3d at 150-51 (lower court erred in applying factor to

reasonableness inquiry that was more appropriately part of a forum non conveniens analysis).

Four of the five Gestalt factors tip the jurisdictional balance against the exercise of

specific personal jurisdiction over Ball in Rhode Island.

Regarding the first factor, although DAS has not alleged any special or unusual burden,

see Sawtelle, 70 F.3d at 1395 (defendant's burden meaningful only if "special or unusual"), Ball

is a Texas company with its principal place of business in Texas, tipping this factor slightly in

Ball's favor, given the geographic constraints on this Court's subpoena power.  See Lawson,

2010 WL 4455823, at *4.  The second factor, Rhode Island's interest in the case, cuts against

personal jurisdiction – Rhode Island's interest is minimal because the tortious acts primarily

occurred elsewhere.  See Sawtelle, 70 F.3d at 1395 (forum state interest is minimal when

22

conduct comprising alleged tortious acts occurred almost entirely outside forum state); Lawson, 2010 WL 4455823, at *4 (Rhode Island's interest in protecting its citizens is diminished when all of alleged conduct occurred out of state).  Rhode Island's interest is also undercut by the DAS/Progressive License Agreement's Texas choice of law and forum clauses.

The fourth Gestalt factor, the administration of justice, examines the judicial system's interest in obtaining the most effective resolution.  See Sawtelle, 70 F.3d at 1395.  Here, judicial economy would be better served in a jurisdiction where a substantial portion of the conduct occurred, which is not Rhode Island.  Lawson, 2010 WL 4455823, at *4 ("effective and convenient resolution of the controversy is best had in the forum in which the alleged [conduct] occurred"); Clark v. City of St. Augustine, Fla., 977 F. Supp. 541, 545 (D. Mass. 1997) ("The most effective resolution of the controversy appears to be in Florida, the law of which will apply, where the accident took place and where any witnesses, other than the plaintiffs, reside.").

The fifth Gestalt factor considers the common interests of all sovereigns in promoting substantive social policies.  See Sawtelle, 70 F.3d at 1395.  As in Sawtelle, the most prominent policy implicated here is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors.  Although the concept of long-arm jurisdiction must adjust as technological advances blur the boundaries between states, the First Circuit has cautioned that "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." Id. at 1396.  If specific jurisdiction were to lie in this case, it would lie in any case in which damages are an element of the plaintiff's cause of action and the plaintiff is located in the forum state.  To exercise personal jurisdiction here would foreshadow the demise of meaningful limits on personal jurisdiction.  See id. at 1395-96.  Since all states have an interest in limitations on personal jurisdiction, so that their own

citizens are not dragged off to faraway courts, the common interest of sovereigns tips towards Ball.

Only the third Gestalt factor, plaintiff's interest in obtaining convenient and effective relief, weighs in favor of personal jurisdiction.  See id. at 1395 (plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience).  However, it is not enough to alter an analysis that so firmly leads to the conclusion that specific jurisdiction is not proper in Rhode Island.  See id. at 1396.

Just as general jurisdiction is not appropriate because Ball is not "at home" in Rhode Island, I find that specific jurisdiction is lacking because the only connection between Rhode Island and the claim is the happenstance that DAS is based in Rhode Island so it is the locus of the alleged injury.  If personal jurisdiction exists in this case, it would exist in every case where a litigant suffers economic injury in its home state, no matter where the perpetrator is located or where the conduct that caused the injury occurred.  Due process requires more.

## IV.    VENUE

Pursuant to 28 U.S.C. § 1391(b), venue is proper only in a judicial district in which Ball resides, where a substantial part of the events or omissions giving rise to the claim occurred or where Ball is subject to personal jurisdiction with respect to such action.  Without either general or specific personal jurisdiction over Ball, the District of Rhode Island is an improper venue. See Morel ex rel. Moorehead v. Estate of Davidson, 148 F. Supp. 2d 161, 168 (D.R.I. 2001) (citing 28 U.S.C. § 1406(a)).  Under circumstances where this Court lacks personal jurisdiction and venue over the only defendant, "it may, in the interests of justice, transfer the case under [28 U.S.C. § 1361] or [28 U.S.C. § 1406(a)] to a court in which venue and jurisdiction would be proper."  Sullivan v. Tagliabue, 785 F. Supp. 1076, 1082-83 (D.R.I. 1992) (justice requires

transfer because parties have engaged in substantial discovery).  Here, however, there has been

no discovery and the factual record regarding a proper venue is inadequate in that the parties

have not submitted specific factual averments on the existence or location of witnesses,

documents and other evidence pertinent to venue.  See R.J. Carbone Co. v. Regan, 582 F. Supp.

2d 220, 224 (D.R.I. 2008) (court should not speculate on proper venue).  Accordingly, this case

should be dismissed for improper venue and Ball's alternative motion to transfer should be

denied as moot.

## V.  CONCLUSION

I recommend that Ball's Motion to Dismiss for Lack of Personal Jurisdiction and

Improper Venue be GRANTED.  I further recommend that Ball's alternative Motion to Transfer

Venue be DENIED as moot.

Any objections to this Report and Recommendation must be specific and must be filed

with the Clerk of Court within fourteen (14) days after the date of service.  See Fed. R. Civ. P.

72(b).  Failure to file specific objections in a timely manner constitutes waiver of the right to

review by the district court and of the right to appeal the district court's decision.  See United

States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor

Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 28, 2013